SEARS, ROEBUCK & CO., ET AL. *v*. UNITED STATES (No. 4369)[1]

---

[1] C. A. D. 207.

United States Court of Customs and Patent Appeals, April 27, 1942

*James W. Bevans* for appellants.

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Dorothy C. Bennett*, special attorney, of counsel), for the United States.

[Oral argument February 4, 1942, by Mr. Bevans and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal, in a reappraisement case involving thirteen importations, from an interlocutory judgment of the Third Division of the United States Customs Court, sitting in appellate term, reversing the judgment of the trial court and remanding the case for reconsideration on the record "giving no weight to the evidence contained in Exhibit 1."

Such an appeal we have held to be proper procedure. *United States* v. *Elliott, Green & Co. et al.*, 28 C. C. P. A. (Customs) 177, 181, C. A. D. 141.

The involved merchandise consists of ungalvanized standard plow steel wire ropes in various sizes exported from Germany at different times from November, 1935, to August, 1937. The shipments were entered at the ports of New Orleans, Memphis, Boston, and Philadelphia.

Reappraisements 118692–A and 119113–A, consolidated for trial, concern importations at the ports of Memphis and New Orleans respectively. Those are test cases in which the appraiser of merchandise returned export values higher than the invoice prices at which the merchandise was entered. The remaining eleven reappraisements are duress entries which cite one or both of the test cases.

The merchandise was entered and appraised on the basis of export value as defined in section 402 (d) of the Tariff Act of 1930. There is no dispute as to the correctness of that basis of appraisement, the controversy being as to the proper amount of the statutory value of the merchandise.

The values of the goods as invoiced and entered were expressed in United States dollars per hundred feet which appellant claims represent the dutiable export values in the principal markets of Germany.

The merchandise was appraised in reichsmarks per hundred kilos, less 10 per centum discount, less nondutiable charges, plus reels.

During the course of the trial, which was held in the city of New York, counsel for plaintiffs (appellants here) offered in evidence the invoices and entry papers in reappraisement appeal 118692–A of Montgomery Ward & Co. They were received in evidence, over objection by Government counsel, and marked Collective Exhibit 1. That exhibit discloses that Montgomery Ward & Co. imported from a manufacturer in Germany, other than the manufacturer of the involved ropes, "Black Plow Steel Wire Ropes" which were invoiced and entered in American dollars per hundred feet. The ropes of the Montgomery Ward shipments are apparently of the same size as those of the involved merchandise.

There was received in evidence on behalf of the Government, a report of a Treasury attaché in Germany, dated June 26, 1935, which enclosed a price list of the "German Wire Rope Export Association, Essen." That list purports to contain the "Minimum Export Prices for Wire Ropes (Base Price List)," based upon the different wire diameters and different breaking strength of ropes made of iron and of crucible steel. The prices are in reichsmarks per hundred kilos. It was upon this price list that the merchandise here and that in the Montgomery Ward case were appraised.

A witness for the plaintiffs, who was a buyer for Sears, Roebuck & Co., with 20 years' experience in importing wire rope, testified that the involved merchandise is made of standard plow steel in accordance with standards required by the United States Government; that all wire rope made of plow steel under federal specifications must necessarily be the same; that the specifications include the construction of the rope, its quality and its breaking strength; that there is a higher grade than plow steel, known as improved plow steel which has a higher breaking strength and is more expensive; that black plow steel wire rope is the same as standard plow steel rope; that during his 20 years' experience in purchasing wire rope he had never bought wire rope from Germany nor sold wire rope in the United States on a weight basis but always by length, and that the prices quoted to his principal had always been on the basis of length and not weight.

An affidavit of a director of the manufacturer of the goods herein contains the following statement:

That the above Company has no agreement of any kind limiting the sales to the United States, to Sears, Roebuck and Co., but that they can sell at the same prices to anyone who desires to buy; that the wire ropes manufactured according to the German specifications are sold at prices per 100 kilos while the ropes to the United States are sold at prices per 100 feet, that the wire ropes manufactured

under the German specifications are sold for the German market at prices controlled by a Cartel, that such prices vary considerably and are subject to a complicated rebate system and that, therefore, uniform prices do not exist, that as herein before stated, a comparison of the export prices for goods shipped to the United States and the prices for ropes sold in Germany cannot be made because of the methods of selling in Germany and particularly because of the differences between the ropes manufactured according to the German Standards and those manufactured according to the American Standards, those for the United States being manufactured according to entirely different conditions and manufacturing processes.

The case was submitted to the trial court April 25, 1939, and in a decision dated December 21, 1939, the trial court, after having set out in quite some detail the evidence before it, stated as follows:

In a reappraisement appeal the burden rests upon the plaintiff to prove, first, that the appraiser was wrong, and second, that the values contended for by him are correct. Counsel for the plaintiff in his brief filed herein contends that the appraiser's action was erroneous for the reason that the values arrived at by the appraiser were in reichsmarks per 100 kilos whereas the sales to the plaintiff and other importers were made in American currency per 100 feet.

In my opinion the record does not sustain this contention. The notations upon the entry papers combined with the evidence of actual payments, would seem to establish that the purchase of the imported merchandise was made in reichsmarks. Moreover, it would appear that the exporter of the merchandise herein in common with all the other German manufacturers who exported steel wire rope to the United States was a member of the German Steel Wire Rope Export Association which fixed the minimum prices of steel wire rope exported from Germany in reichsmarks per 100 kilos.

In my opinion the appraiser was justified in accepting these minimum prices as the basis of his appraisements, and there is no evidence in the record that the steel wire rope was not offered at such minimum prices to all purchasers in the usual wholesale quantities in the ordinary course of trade for export to the United States.

Upon the entire record, I find that the plaintiff has not sustained the burden either of proving that the action of the appraiser was erroneous or that the values contended by him constitute the correct export values of the merchandise herein.

I therefore find that the export value is the proper basis for determining dutiable value, and that there is no foreign value for said merchandise. Hence, I find such export values to be the values found by the appraiser. Judgment will be rendered accordingly.

The plaintiffs moved the trial court for a rehearing. The motion was granted. No further record was made, but in a decision dated February 23, 1940, the court reversed its former judgment and in a further statement of the evidence, in its decision, referred to Collective Exhibit 1 as follows:

At this juncture the plaintiffs offered the invoices and entry papers in reappraisement appeal 118269–A of Montgomery Ward & Co., showing prices approximately the same as those on the invoices and covering precisely similar merchandise as that involved herein. Over objection by counsel for the Government the said invoices and entries were admitted in evidence and marked Collective Exhibit 1.

The trial court then set out its reasons for reversing its former judgment in the following language:

Upon a reconsideration of the record herein, and in view of the arguments presented by counsel at the rehearing held before me on February 2, 1940, I am satisfied that I was in error in holding the price list of the German Steel Wire Rope Export Association to constitute a free offer of sale to all purchasers of the wire rope in question for export to the United States and that the appraiser was justified in basing his appraisement upon the minimum prices set forth in said price list. This price list was evidently merely for the benefit of German exporters who belong to the said association in fixing their prices to their customers and was never offered to American purchasers as an offer of sale.

Moreover, there is no evidence anywhere in this record of any sales at the said minimum prices to any purchaser. The only sales in the record of steel wire rope of any kind are those to this importer, to Montgomery Ward & Co., and to the Kloeckner Steel Co., all of which sales were made in dollars per unit of 100 feet and not in reichsmarks per 100 kilos.

Moreover, it appears from the evidence that the steel wire rope sold to the Kloeckner Steel Co. was galvanized and therefore not similar to the merchandise herein.

Furthermore, the fact that according to the Treasury attaché's report transmitting the German price list in question, it is stated that there was a trade discount from said list of 10 per centum and a selling commission of 5 per centum which clearly indicates that the said price list was not followed in making sales of steel wire rope for export to the United States.

Inasmuch, therefore, as the plaintiffs herein have offered in evidence the only sales of the steel wire rope in qustion [question], I am now convinced that they have sustained the burden of proving an export value for said merchandise different from the appraised value.

Counsel for the Government stresses the point that the German manufacturer was actually paid in reichsmarks and not in dollars, and in my former decision I called attention to the statement on the invoice to this effect as contradicting the plaintiffs' contention that the transaction was in American dollars. Naturally such payment in any event would be made in a number of reichmarks [reichsmarks] equivalent to the agreed upon purchase price in dollars at the then current rate of exchange. I am now convinced that said conversion of currency does not contradict the fact that both the offer of sale and the sale of the instant merchandise were as a matter of fact in dollars per 100 feet. Moreover, in my opinion the fact that the plaintiffs were able to purchase German marks at a less rate in American dollars than the current rate of exchange at the time of importation is immaterial.

On all the facts and the law I therefore find that the dutiable values of the steel wire rope constituting the imported merchandise at bar are the entered values thereof less any additions made by the importers upon entry because of advances made by the appraiser. Judgment will be rendered accordingly.

From that judgment of the trial court, the Government appealed to the said appellate division which reversed the decision of the trial court, stating in part as follows:

The Assistant Attorney General assigns error to the admission of invoices of Montgomery Ward & Co., exhibit 1, covering steel wire rope. Those invoices were contained in the file in reappraisement 118269–A which had not been submitted before the court for decision. The plaintiff in the court below did not

offer any evidence to show that the merchandise covered by the invoices in that exhibit was the same as that in the cases herein involved. He relied merely on the testimony of witness Rennhack who stated that all steel wire rope imported from Germany is manufactured according to United States standard specifications. The appellant calls attention to the fact that some of the invoices in that exhibit describe the merchandise as "Black crucible cast steel wire ropes" and that the importer's witness Rennhack testified on redirect examination that such a description would not apply to the rope in the instant cases. This testimony is as follows:

R. Q. Would you say that the expression, "Black crucible cast steel", wire rope, would apply to the rope that we have here today?—

\* \* \* \* \* \* \*

R. Q. Would that term, description, apply to your rope before the Court today?—A. It would not.

The appellant points out also that the description of the black plow steel rope on the Montgomery Ward & Co. invoices in exhibit 1 is different from that on the invoices in the instant cases. The Montgomery Ward & Co. invoices show the "tensile strength" of the individual wires whereas the invoices in the instant cases specify the "breaking strength" of the rope.

We are of opinion that the trial court erred in admitting exhibit 1 in evidence, and, inasmuch as the trial court relied on that exhibit in the decision, the admission of the exhibit constitutes reversible error.

The only proper question to be determined here is whether the appellate division erred as a matter of law in holding that Collective Exhibit 1 was not competent and therefore should not have been received in evidence by the trial court.

It is not the function of this court to weigh the evidence in reappraisement appeals and of course we do not do so in the instant case. The only reason that the evidence and excerpts from the decisions below have been set out at such length is for a clear understanding of the record as it affects the question of law before us. The weight to be attached to all of the evidence or any part thereof is the function of the trial and reviewing tribunals below.

From an examination of the facts as set forth herein, we think that Collective Exhibit 1 was properly admitted in evidence. What weight should have been attached to it we cannot undertake to state. As hereinbefore noted, the witness Rennhack testified that black plow steel wire rope is the same as standard plow steel wire rope. Collective Exhibit 1 contains among other things invoice prices of black plow steel wire rope at prices according to length rather than by weight. We are of opinion, therefore, that the exhibit was competent evidence and should have been considered for whatever it was worth.

By reason of what has been hereinbefore stated the judgment appealed from is *reversed* and the case *remanded* with instructions to find the proper dutiable value of the merchandise herein on the record made before the trial court.